IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00148-PAB-MJW

CHINOU VUE,

Plaintiff,
v.

MELISSA HARMON (Individual Capacity), Acting Broomfield Nurse,
JANE DOE (Individual Capacity), Acting Broomfield Nursing Director,
CHRISTOPHER TERRY (Individual Capacity), Acting Broomfield Sargeant, and
THOMAS C. DELAND (Individual Capacity), Acting Broomfiled Police Chief;

Defendants.

---

**RECOMMENDATION ON**
**DEFENDANTS TERRY AND DELAND'S MOTION TO DISMISS (Docket No. 31)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to a General Order of Reference to United States Magistrate Judge (Including Dispositive Motions) issued by Chief Judge Edward W. Nottingham on June 26, 2008. (Docket No. 18). The case was just recently reassigned to District Judge Philip A. Brimmer. (Docket No. 35).

**Plaintiffs' Allegations**

The court received the pro se incarcerated plaintiff's original Prisoner Complaint on January 14, 2008 (Docket No. 3), in which plaintiff named "Bivens V. Six Unknown Named Agents" as the sole defendant. Plaintiff was thus directed to cure specified deficiencies (Docket No. 2), and plaintiff subsequently filed an Amended Complaint on February 29, 2008 (Docket No. 4). On March 21, 2008, Magistrate Judge Boyd N.

Boland directed the plaintiff to file another Amended Complaint because the court found that the Complaint filed by the plaintiff was deficient because plaintiff failed "to allege facts to demonstrate that a properly named defendant personally participated in the alleged constitutional violations." (Docket No. 7). The court noted that personal participation is an essential allegation in a civil rights action and that to establish such personal participation, plaintiff must show that each named defendant caused the deprivation of a federal right. In addition, the court noted that "[t]here must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise." (Docket No. 7 at 2) (citation omitted). Furthermore, the court advised plaintiff that "[a] defendant may not be held liable on a theory of respondeat superior." (Docket No. 7 at 2) (citations omitted). The court further stated:

> . . . Plaintiff has failed to assert how Defendant Melissa Hamon personally participated in the alleged constitutional violations. Furthermore, Defendant Thomas C. Deland is an improperly named defendant under the respondeat superior theory.
>
> In Claim Three, Plaintiff refers to the Broomfield County Sheriff, who is not listed in the caption of the Complaint. He also refers to "Bivens v. Six Unknown Named Agents," which as discussed in the above footnote, is the name of a case decided in the United States Supreme Court and not a properly named defendant in the instant action.
>
> Therefore, Mr. Vue will be directed to file an Amended Complaint that alleges how each named defendant personally participated in the asserted constitutional violation. In order for Mr. Vue to state a claim in federal court, the Amended "[C]omplaint must explain what each defendant did to him or her, when the defendant did it; how the defendant's action harmed him or her, and, what specific legal right the plaintiff believes the defendant violated." . . .

(Docket No. 7 at 2) (citation omitted).

Plaintiff then filed another amended pleading (Docket No. 10) in which he named as defendants Melissa Harmon, Acting Broomfield Nurse; Jane Doe, Acting Broomfield Nursing Director; Christopher Terry, Acting Broomfield Sergeant; and Thomas C. Deland, Acting Broomfield Police Chief. Plaintiff sets forth the following as a statement of the nature of the case:

> This Plaintiff was in the Broomfield county jail around February 15, 2006 through August 2006. This incident happened circa March/April 2006. This Plaintiff kept filing medical kites to be seen by medical for the drainage that was coming out of my right ear. The drainage was going on and off due to the fact of that I was getting in and out of the showers and the type of medication that I was being given by medical. This Plaintiff indicated just how bad it was to be seen by medical. Later in the week, I was taken down to medical and seen by a nurse, Ms. Melissa Harmon, for a check-up. Defendant Melissa Harmon looked into my ear with a scope, then tried to flush it out with Peroxide and Hot Water. This particular procedure did not work. Ms. Harmon then used a Q-Tip with a wooden shaft to try and pull the wax out of my right ear. At first she got a little, and then Ms. Harmon went in a second time, and she pushed in too deep. I felt a painful pop in my right ear, and I yelled for her to stop due to the excessive pain. This Plaintiff felt his right ear thumping and pumping, and heard a ringing in his right ear. Ms. Harmon pulled the wooden Q-Tip out of my right ear, and I could see that the Q-Tip was drenched in blood. Ms. Harmon handed me numerous cotton balls, and I attempted to stop the excessive bleeding that was coming from my ear. The excessive bleeding would not stop for a long time, andthe [sic] pain was getting excessively greater. Ms. Harmon then called the head nurse, Ms. Jessie(Jane DOE) to ask what to do Nurse Jessie(Jane DOE) stated to put me on ear drops and antibiotics until the doctors sees me. Nurse Jessie(Jane DOE) stated to put down in the Plaintiff's file that he has had ear problems in the past, which was not true. This Plaintiff has only had problems with drainage.
>
> This Plaintiff came back to the pod with a handful of cottonballs, and some cottonballs taped to my right ear. Sheriff Scott, a female officer, asked this Plaintiff what happened, and I replied" I don't know". I had to sleep with my left side up. If I accidentally rolled over to my right side while I was sleeping, my mouth would fill up with blood from my right ear. My right ear bled for four(4) days. I was taken to Boulder County Jail on another case shortly after the incident, and the physician at Boulder County told me, afte [sic] examination, that my eardrum would eventually heal, but I would lose most of my hearing. The Boulder County Jail

> physician started me on biotics [sic] as well. **When I got back to the Broomfield Detention Center, this Plaintiff wrote to Defendant Christopher Terry and Defendant Thomas Deland, acting Police Chief about the medical incident, and this Plaintiff was never responded to.** Once this Plaintiff was transferred to the Colorado Department of Corrections, this Plaintiff has noticed that he has virtually no hearing in his right ear. This Plaintiff was never seen by the Broomfield Detention Center physician.

(Docket No. 10 at 4-5) (emphasis added).

Plaintiff raises two claims for relief. First, he alleges a violation of the Eighth Amendment, claiming cruel and unusual punishment. He asserts the following in this claim:

> During the initial examination and treatment, Defendant Harmon maliciously with evil intent, damaged this Plaintiff's right eardrum permanently, and failed to follow-up and rectify the situation with this Plaintiff's right ear. Defendant Nurse Jessie(Jane DOE) was called in at the last minute, and failed to remedy the situation and maliciously with evil intent never rectified the broken eardrum situation, and attempted maliciously with evil intent to falsify this Plaintiff's medical file.

(Docket No. 10 at 6). Second, plaintiff alleges deliberate indifference, claiming:

> Immediately after Defendant Harmon damaged this Plaintiff's eardrum, permanently, Defendant Nurse Jessie(Jane DOE) never followed up on the situation, and the need to remedy the loss of this Plaintiff's eardrum and hearing. Nurse Jessie(Jane DOE) knew of this Plaintiff's medical dilema [sic], and maliciously with evil intent ignored the problem, and failed to fix the problem. **Defendant Christopher Terry was notified of the medical problem of this Plaintiff shortly after the incident and maliciously with evil intent ignored the medical problem of this Plaintiff, and failed to direct its remedy. Defendant Thomas Deland, the acting Police Chief, was alerted to the medical problem of this Plaintiff shortly after the incident of the broken eardrum and loss of hearing, and maliciously with evil intent, Defendant Thomas Deland failed to act on the medical situation and failed to order the remedy of this Plaintiff's loss of eardrum and hearing loss.**

(Docket No. 10 at 7) (emphasis added).

**Defendants' Motions to Dismiss**

Now before the court for report and recommendation is Defendants Terry and Deland's Motion to Dismiss. (Docket No. 31). Plaintiff did not file a response to the motion. The court has very carefully considered the motion, the court's file, and applicable case law and Federal Rules of Civil Procedure. The court now being fully informed makes the following findings, conclusions, and recommendation.

Defendants Terry and Deland seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), asserting that based on the allegations set forth in that pleading, plaintiff can prove no set of facts in support of his claim against them which would entitle plaintiff to relief. For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual

allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

It is unclear whether plaintiff was a pretrial detainee when the incident at issue occurred. Plaintiff claims his Eighth Amendment rights were violated. Even if plaintiff was a pretrial detainee, "[a]lthough pretrial detainees . . . are protected under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment, courts apply an analysis identical to that applied in Eighth Amendment cases in determining whether a detainee's rights were violated." Schaal v. Fender, 2007 WL

2461642 (D. Colo. Aug. 27, 2007). See Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement . . . , the Eighth Amendment standard provides the benchmark for such claims."). "[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id.

"To establish deliberate indifference, a prisoner must demonstrate more than mere negligence; a negligent failure to provide adequate medical care, even one constituting medical malpractice, does not rise to the level of a constitutional violation." Alejo v. Gonzalez, 2000 WL 64317, *1 (10th Cir. Jan. 26, 2000). See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Glick v. Romer, 2000 WL 328127 (10th Cir. Mar. 29, 2000). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. "The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm. . . . Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted).

Defendants Terry and Deland contend they are entitled to qualified immunity because there are no allegations in the Amended Complaint sufficient to demonstrate that they violated a constitutional right. More specifically, the moving defendants assert that the Amended Complaint fails to allege any facts demonstrating personal participation by defendants Terry or Deland. In the Order directing plaintiff to file an amended pleading (Docket No. 7), plaintiff was advised that personal participation is an essential allegation in a civil rights action, but he did not cure the deficiency when he amended his pleading yet again.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who

> actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted). Furthermore, "[a]n individual defendant may not be held liable on a theory of respondeat superior merely because of his or her supervisory position." Sanderson v. City of Aurora, 2008 WL 2037808, *2 (D. Colo. May 9, 2008) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983)). In addition, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Here, defendants correctly note that plaintiff seeks to hold Terry liable because he was notified of plaintiff's medical problem and "failed to direct its remedy." Similarly, plaintiff seeks to hold Deland liable on the basis that Deland was notified of plaintiff's "medical problem" and "failed to act on the medical situation and failed to order the remedy of . . . Plaintiff's loss of eardrum and hearing loss." Furthermore, defendants

correctly note that the Amended Complaint does not allege that these defendants personally participated in any of the decisions regarding plaintiff's medical care. Plaintiff does not allege that they personally participated in the denial of medical treatment or that they had responsibility for enforcing or allowing the continuation of any policies that resulted in the denial of plaintiff's treatment. In addition, plaintiff does not allege that these two defendants are doctors, were responsible for the facility's medical program, personally participated or were even capable of providing plaintiff with medical care, or knowingly and intentionally rendered improper treatment in that they knew of and disregarded an excessive risk to plaintiff's health. Rather, plaintiff alleges that they failed to respond to his written correspondence sent after he returned from Boulder, but defendants correctly note that plaintiff does not specify the contents of such correspondence or what relief, if any, was requested. Defendants assert that plaintiff apparently seeks to attach personal liability to them based solely upon their positions with the City and County of Broomfield, where Terry is an Administrative Sergeant and Deland is the Chief of Police, which they contend is insufficient as a matter of law. This court agrees with defendants' assertions.

Furthermore, as correctly noted by these defendants, plaintiff alleges that at the time these defendants were notified of plaintiff's ruptured ear drum and hearing loss, those injuries had already occurred, and apparently no further medical treatment was necessary. Defendants further correctly note that plaintiff alleges that the doctor who examined him after his transfer to Boulder County Jail informed plaintiff that his "eardrum would eventually heal, but [plaintiff] would lose most of [his] hearing." In addition, plaintiff does not allege that that doctor recommended any specific treatment

that was subsequently denied to plaintiff as a result of an action or inaction by defendants. Therefore, plaintiff has not alleged that once he allegedly notified these two defendants of his medical problem, there was any action that could have or should have been done by these defendants. Therefore, plaintiff has not stated a constitutional violation, and plaintiff's claims against defendants Terry and Deland should be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants Terry and Deland's Motion to Dismiss. (Docket No. 31) be granted.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: November 3, 2008
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge